**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

CHRISTINE GILBERT,

      Plaintiff,                   :          Case No. 3:05-cv-265

   -vs-                                    Chief Magistrate Judge Michael R. Merz

                               :

BEAVERCREEK TOWNSHIP,

      Defendant.

**DECISION AND ORDER**

This case is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 10), which Plaintiff has opposed (Doc. No. 25), and on Plaintiff's Motion for Summary Judgment (Doc. No. 14) which Defendant has opposed (Doc. No. 26) and on which Plaintiff has filed a Reply Memorandum in support (Doc. No. 27).

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). Nevertheless, "the mere existence of *some* alleged

1

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed. R. Civ. P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate. *Id.* The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249-50, 106 S. Ct. at 2510-11 (citations omitted). "The mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp*., 964 F. 2d 577, 582 (6th Cir. 1992)(quoting *Gregg v. Allen-Bradley Co.,* 801 F. 2d 859, 863 (6th Cir. 1986). Therefore a court must make a preliminary assessment of the evidence, in order to decide whether the plaintiff's evidence concerns a material issue and is more than de minimis. *Hartsel v. Keys*, 87 F. 3d 795 (6th Cir. 1996). "On summary judgment," moreover, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962). Thus, "the judge's

function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249, 106 S. Ct. at 2510.

The moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323; *see also, Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (citation omitted). If the moving party meets this burden, the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587; *Martin v. Ohio Turnpike Comm'n.*, 968 F. 2d 606, (6th Cir. 1992), *cert. denied*, 506 U.S. 1054, 113 S. Ct. 979, 122 L.Ed.2d 133 (1993).

In ruling on a motion for summary judgment (in other words, determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.,* 260 F.3f 574, 581 (6th Cir. 2001). "Materiality is determined by the substantive law claim." *Boyd v. Baeppler,* 215 F.3d 594, 599 (6th Cir. 2000). An issue is genuine if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics*

3

*& Space Admin.,* 14 F.3d 1143, 1148 (6th Cir. 1994), quoting *Anderson,* 477 U.S. at 248. Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala,* 205 F.3d 937, 943 (6th Cir. 2000). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Simmons-Harris v. Zelman,* 234 F.3d 945, 951 (6th Cir. 2000), *rev'd on other grounds,* 536 U.S. 639 (2002). Thus, a factual dispute which is merely colorable or is not significantly probative will not defeat a motion for summary judgment which is properly supported. *Kraft v. United States,* 991 F.2d 292, 296 (6th Cir.), *cert. denied* 510 U.S. 976 (1993); *see also, Int'l Union United Auto., Aerospace & Agriculture Implement Workers of America v. BVR Liquidating, Inc.,* 190 F.3d 768, 772 (6th Cir. 1999), *cert. denied* 529 U.S. 1076 (2000).

The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street,* 886 F.2d at 1479. A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the [non-moving party]." *Anderson,* 477 U.S. at 252. If, after sufficient opportunity for discovery, the non-moving party is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp.,* 477 U.S. at 322-23.

The party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt,* 226 F.3d 506, 511 (6th Cir. 2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enterprises v. Elvisly Yours, Inc.,* 936 F.2d 889, 895 (6th Cir. 1991).

Although the parties have filed cross-motions for summary judgment, they do not concede the facts are truly undisputed from the opposing party's perspective as well as their own. Compare Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d §2720 (1998). Therefore the

4

foregoing standard for deciding summary judgment motions must be applied to the two Motions for Summary Judgment separately.

**Analysis**

**Plaintiff's Claims**

In her First Amended Complaint (Doc. No. 24)[1], Plaintiff asserts the following claims for relief: discrimination in violation of the Americans with Disabilities Act ("ADA") (First Claim), retaliation in violation of the ADA (Second Claim), sex discrimination in violation of Title VII of the 1964 Civil Rights Act (Third Claim), retaliation in violation of Title VII (Fourth Claim), sex discrimination in violation of Ohio Revised Code §§ 4112.02 and 4112.99 (Fifth Claim), disability discrimination in violation of Ohio Revised Code §§ 4112.02 and 4112.99 (Sixth Claim), retaliation in violation of in violation of Ohio Revised Code §§ 4112.02 and 4112.99 (Seventh Claim), invasion of privacy and other constitutional rights in violation of the First and Fourteenth Amendments to the United States Constitution (Eighth Claim), unlawful search and seizure in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution (Ninth Claim), and wrongful termination in violation of the common law of Ohio (Tenth Claim).

**The Evidence Presented**

Neither party identified lay or expert witnesses as provided in the Court's Scheduling Order

---

[1] Although the First Amended Complaint was filed after the Plaintiff's Motion for Summary Judgment, Plaintiff seeks summary judgment on all the claims made in the First Amended Complaint (Plaintiff's Motion for Summary Judgment, Doc. No. 14, at 2.)

5

of November 29, 2005 (Doc. No. 8, ¶¶ 4, 5)[2].  The summary judgment motions rely on the depositions of Christine Gilbert, the Plaintiff, (Doc. No. 18), Wayne Muterspaw, Defendant's Road Superintendent, (Doc. No. 19), and Trish Gustafson, Defendant's Human Resources Manager (Doc. No. 20)[3], and the Affidavit of Anthony Almazan, M.D. (attached to Doc. No. 10).

It is uncontested that Plaintiff was employed by Defendant, an Ohio political subdivision, starting in a part-time position in March, 2000, moving to full-time employment as a Service Worker I in the Road Department in September, 2000, and being promoted to a Service Worker II in early, 2003.  Plaintiff's employment was terminated as of March 29, 2005.  Plaintiff was off work in August, 2004, because of illness (Amended Complaint, Doc. No. 24, ¶11).

The following testimony appears in Plaintiff's deposition:  In May, 2004, Ms. Gilbert's family physician, Dr. Van Trease, had a magnetic resonance imaging ("MRI") test performed on Ms. Gilbert's back because Ms. Gilbert was experiencing "back pains and stuff of that nature" (Gilbert Depo., p. 18).  Ms. Gilbert learned from a specialist to whom she was referred by Dr. Van Trease that the MRI showed two bulging disks. *Id*. at 19.  The specialist believed physical therapy would fix the problem and surgery was not necessary. *Id*.  Ms. Gilbert had previously done physical therapy in March and April, 2004, which had not completely fixed her back problem. *Id*. at 22.

Upon her return to work in late August, 2004, Plaintiff was "stretching her back" (Gilbert Depo., p. 17).  Her supervisor, John Schroeder, observed that behavior, asked if she had injured her back, and told her to report to Mr. Muterspaw after she said she had had an MRI done. *Id*. She had not previously reported the MRI to anyone else at her place of employment. *Id*. at 19-20.

In May, 2004, Ms. Gilbert's doctor had restricted her to not lifting more than ten pounds,

---

[2]Counsel may have identified witnesses to one another; no witness lists were filed with the Court.

[3]None of the deposition transcripts are signed by the deponent.  However, no party objects to the accuracy of the transcription or use of the depositions in their unsigned form.

6

pending the MRI. *Id*. at 21 and Exhibit B. Ms. Gilbert had been having back problems "on and off probably since my daughter was born in 2002." *Id*. On September 1 and 2, 2004, Dr. Van Trease wrote notes for Plaintiff indicating she could perform her job with no restrictions. *Id*., Exhibits C and D.

Despite presentation of these two notes from her own doctor, Plaintiff was sent to MedWork for a physical examination. *Id*. at 29. The examining physician looked at "lots of back movement-type things." *Id*. He then requested copies of Plaintiff's medical records concerning prior treatment. *Id*. A nurse next brought Ms. Gilbert a release form which she refused to sign. *Id*. at 36. The doctor told her he hadn't found anything wrong, but wanted to see her medical records. *Id*. at 37. He did not give her any paperwork to enable her to return to work. *Id*. at 38. Ms. Gilbert had read the MRI report to Ms. Gustafson over the telephone, but then she shredded it and no longer has it. *Id*. at 58. Aside from the medical release form which she refused to sign, Ms. Gilbert could not recall at her deposition whether she was ever told that the only records she needed to take to MedWork were those concerning her back. *Id*. at 59-60. She denied she was ever informed in writing that only records relating to her back were needed. *Id*. at 60.

Plaintiff believes that Defendant was trying to discharge her so that it could keep a male summer employee, Josh Cunnigan[4], in her place. *Id*. at 43-44. Mr. Muterspaw had said he wanted to keep Mr. Cunnigan but Tim Parks had said there was no money in the budget for an additional worker. *Id*. Ms. Gilbert guesses that Josh was hired full-time. *Id*. (Mr. Muterspaw confirmed that Josh Pollack was hired full-time in April, 2005, and continued to be employed in the mainteance department in June, 2006. Muterspaw Depo. at 29-29.) Although Mr. Muterspaw is distantly related to Plaintiff by marriage, she believes he is also related to Mr. Cunnigan. (Gilbert Depo. at

---

[4]"Josh" is identified in Mr. Muterspaw's deposition as Josh Pollack. (Muterspaw Depo. at 28.)

46.)

Respecting her claim of sexual harassment, Plaintiff asserted in her deposition that one or more co-workers had said to other co-workers, but not in her presence, things to the effect that the work she was doing was not woman's work or they preferred to work with other men. *Id*. at 51. When confronted about the statements, the complaining co-workers apologized to her. *Id*. at 51-52. On one occasion, Mr. Muterspaw made a comment to "everybody" after a supervisor's training session on sexual harassment that Ms. Gustafson, who conducted the session, should not have done so in clothing that, in Mr. Muterspaw's opinion, emphasized her breasts. *Id*. at 53. None of these comments interfered with Ms. Gilbert's work performance. *Id*.

Wayne Muterspaw's deposition contains the following testimony[5]: He has been employed with Beavercreek Township for twenty-five years, beginning as a service worker and working himself up to the job of Road Superintendent which he has held for eleven years (Muterspaw Depo. at 6). He supervises seven employees (including Tim Parks, the maintenance coordinator, and John Schroeder, the road foreman) and reports directly to the township trustees. *Id*. at 6, 22.

Around the end of August, 2004, Mr. Schroeder advised Mr. Muterspaw that Ms. Gilbert was "favoring her back." *Id*. at 10. When Ms. Gilbert came to see him, she told him she had restrictions of which she had not informed him because she knew she would have to be off work until her doctor cleared her to come back. *Id*. Ms. Gilbert correctly understood the Township did not provide light duty assignments when an injury was non-job-related. *Id*. At first he told Ms. Gilbert she would need to get a note from her own doctor. *Id*. Later, after Mr. Muterspaw talked with Human Resources, Ms. Gilbert was told she would have to go to MedWork. *Id*. at 11. Ms. Gilbert never

---

[5]Although testimony was taken as to a number of exhibits at Mr. Muterspaw's deposition, only Exhibits 15 and 16 were marked at the time and filed with the transcript. The Court assumes that the other numbered exhibits testified to by Mr. Muterspaw are those marked at Ms. Gustafson's deposition. However, the exhibit numbers cannot be seen on any of those exhibits.

refused any work on account of her back. *Id*. at 12. All employees who return to work from an injury are required to go to MedWork to be released to return to work, regardless of whether the injury is on the job or off. *Id*. at 32-33.

Trish Gustafson provided the following testimony during her deposition: Ms. Gustafson has been Human Resources manager for the Township for four years. She reports directly to the Trustees.

On September 17, 2004, Ms. Gilbert met with Ms. Gustafson, following her examination at MedWork. *Id*. at 21. Their conversation is reflected in the memo she provided Ms. Gilbert after the meeting, Exhibit 3.[6] They had no further conversation after that. Exhibit 2 is the actual termination letter; Ms. Gilbert had been given one earlier in December, but the OCRC investigator asked the Township to give her some more time. *Id*. at 22-23. She agreed that Ms. Gilbert was terminated "for not providing the medical information." *Id*. at 26. Other discipline included having tested positive for use of controlled substances and "chronic sick leave abuse." *Id*. at 28.

In August or September, 2004, Ms. Gustafson recalls Ms. Gilbert telling her that Ms. Gilbert had a herniated disk and her back would hurt when she mowed the grass or used a rake or shovel. *Id*. at 29. Ms. Gilbert said this was causing her problems performing her work duties. *Id*. at 30.

Ms. Gustafson testified further that a day or so before Ms. Gilbert's appointment at MedWork, Ms. Gilbert called Ms. Gustafson and read the MRI report to her, asking if that was the right documentation. *Id*. at 38. Ms. Gustafson recalls responding "that's exactly what they need." *Id*. Ms. Gilbert had told Ms. Gustafson that she didn't turn in her work restrictions from her doctor because the Township policy did not allow injury leave if the injury was not work-related; "[t]herefore she wouldn't have any pay." *Id*. at 40.

---

[6]Ms. Gustafson agreed the date on Exhibit 3 was wrong and should have been September 17, 2004.

Although she could not point to anything in writing, Ms. Gustafson recalled a meeting at which Ms. Gilbert was told that she only needed to release medical information about her back; Karen Payne, three other people, and Ms. Gilbert's prior counsel were present. *Id*. at 52.

Dr. Almazan avers by Affidavit (attached to Doc. No. 10) that he saw Ms. Gilbert on September 15, 2004, but was unable to complete the return to work evaluation "because I did not have all relative [sic] medical records."

### Plaintiff's Motion

**Constitutional Claims**

Without doubt, Plaintiff was required to submit to the examination by Dr. Almazan as a condition of continued employment. Plaintiff asserts that this is an actionable violation of her rights under the Fourth and Fourteenth Amendments[7], relying on *Feliciano v. City of Cleveland*, 661 F. Supp. 578 (N.D. Ohio 1987). While Plaintiff does not cite to 42 U.S.C. §1983, that is the statute which provides a cause of action to a person injured by deprivation of constitutional rights. The Court interprets Plaintiff's Fourth Amendment claim as being brought under 42 U.S.C. §1983. The Fourteenth Amendment incorporates the Fourth and applies it to the States. *Mapp v. Ohio*, 367 U.S. 643 (1961). The Fourth Amendment protects both privacy and property interests. *Soldal v. Cook County, Illinois,* 506 U.S. 56, 62-63 (1992).

In *Feliciano*, Judge Aldrich held that urine testing for drugs was a Fourth Amendment search. However, she expressly distinguished drug testing from physical examinations of

---

[7]In her First Amended Complaint, Plaintiff cites the First Amendment in her Eighth Claim for Relief. No mention is made of the First Amendment in her Motion nor does the evidence presented give rise to any colorable claim of a First Amendment violation.

10

employees, concluding "the absence of constitutional problems with physical examinations does not require the result that the City urges." 661 F. Supp. at 586. Ordinarily examination of physical characteristics visible to the public does not implicate the Fourth Amendment. *Feliciano*, 661 F. Supp. at 585, *citing Davis v. Mississippi*, 394 U.S. 721, 727 (1969)(fingerprints); *United States v. Dionisio*, 410 U.S. 1, 9 (1973)(a voice exemplar); and *United States v. Mara*, 410 U.S. 19, 21-22 (1973)(a handwriting exemplar). Here the Plaintiff was required to bend and perform certain movements with respect to her back, movements which would have been visible to the general public.

Moreover, even if the physical examination is characterized as a Fourth Amendment seizure of evidence, it must still be judged by a reasonableness standard, as Plaintiff indeed contends. Reasonableness in the Fourth Amendment context is a question of law for the trial judge. *Hunter v. Bryant*, 502 U.S. 224 (1991). Here the employer had a reasonable basis for believing that there was a problem with Ms. Gilbert's back which might interfere with her work, to wit, that she had been given work restrictions by her doctor on three occasions which she had failed to reveal, that she had had an MRI of her back, that she had bulging disks, and that she had been prescribed physical therapy to correct the problem. The facts recited by Plaintiff – that "she never refused to perform any job-related duties , nor requested any accommodations, took any leave time [for her back], nor filed any workers compensation claims due to a back injury or condition" (Motion, Doc. No. 14, at 8) – do not dispel the facts which Defendant had at the time it required her to submit to the examination.

Plaintiff argues that, assuming the examination was reasonable, it "exceeded the scope necessary to determine Plaintiff's fitness for duty." (Motion, Doc. No. 14, at 9). However, while Defendant's agent at MedWork may or may not have requests medical records beyond what was necessary to determine fitness for duty, he did not "seize" them; Plaintiff refused to release her

11

medical records. Where there is no seizure, there can be no Fourth Amendment violation. *County of Sacramento v. Lewis,* 523 U.S. 833 (1998).

Upon the uncontroverted facts, Plaintiff has not proved a violation of her Fourth and Fourteenth Amendment rights by virtue of being compelled to take the physical examination at MedWork. She is not entitled to summary judgment on those claims (Eighth and Ninth Claims for Relief).

**Statutory Claims**

Plaintiff next asserts that the fact she was required to submit to a physical examination and release her complete medical records constitutes a violation of her rights under the Americans with Disabilities Act and Ohio Revised Code §§ 4112.02 and 4112.99.

Plaintiff contends and Defendant does not deny that the same legal standards apply to determining whether there is a violation of the ADA and the cognate Ohio statutes. (Motion, Doc. No. 14, at 9, *citing White v. Honda*, 191 F. Supp. 2d 933, 944 (S.D. Ohio 2002); *Plant v. Morton Int'l. Inc.*, 212 F.3d 929 (6th Cir.2000); *Plumbers & Steamfitters Jt. Apprenticeship Comm. v. Ohio Civil Rights Comm.*, 66 Ohio St.2d 192 (1981).

Plaintiff adamantly asserts that she is not in fact disabled, but rather that she can recover under the ADA and Ohio statutes because she was perceived to be disabled. Her evidence that she was so perceived is that she was ordered to take the examination at MedWorks. Thus her case is remarkably similar to that decided in *Sullivan v. River Valley School Dist.*, 197 F. 3d 804 (6th Cir. 1999). There the Sixth Circuit held that a "request that an employee obtain a medical exam" . . . cannot itself prove perception of a disability because it does not prove that the employer perceives the employee to have an impairment that substantially limits one or more of the employee's major

life activities." *Id*. at 811.

Plaintiff suggests that this reading of the ADA is contrary to the plain meaning of the text and constitutes a minority position among the Circuits. However, *Sullivan* is a published opinion of the Sixth Circuit which is binding on this Court. Trial courts are obliged to follow precedent set by Supreme Court and Courts of Appeals. "Unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." *Hutto v. Davis*, 454 U.S. 370, 375, 102 S. Ct. 703, 70 L. Ed. 2d 556 (1982); *Litman v. Massachusetts Mut. Life Ins. Co.*, 825 F.2d 1506 (11th Cir. 1987). The undersigned has been expressly reminded of this obligation by Chief Judge Boggs, the author of *Sullivan*. See *Lambert v. Warden*, 2003 WL 22071466 (6th Cir. 2003).

Plaintiff asserts that even if she is required to prove that she was perceived as disabled as required by *Sullivan*, "a reasonable juror could come to only one conclusion, that conclusion being that Defendant was on an expedition to find a medical reason to prevent Plaintiff from returning to work because Defendant regarded her as being disabled." (Motion, Doc. No. 14, at 12.) The Court disagrees and finds that a reasonable juror could conclude that Defendant wanted to find out whether or not Plaintiff was able to return to work.

Of course, as the Sixth Circuit also held in *Sullivan*,

> an employer's discretion to order employees to undergo examinations is hardly unbounded. Post-hiring demands for examinations can only be made where shown to be "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). Thus, for an employer's request for an exam to be upheld, there must be significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job. An employee's behavior cannot be merely annoying or inefficient to justify an examination; rather, there must be genuine reason to doubt whether that employee can "perform job-related functions." 42 U.S.C. § 12112(d)(4)(B).

197 F.3d at 811. There remains a material question of fact whether the scope of the medical records

requested from Plaintiff were in fact necessary to make a job-related decision. Plaintiff is not, however, entitled to summary judgment on her statutory claims.

**Common Law Claims**

Plaintiff finally asserts that she is entitled to summary judgment on her common law claim of termination in violation of the public policy of the State of Ohio (Motion, Doc. No. 14, at 14-18).

Ohio substantive law governs this claim where the Court's jurisdiction depends on 28 U.S.C. §1367. 28 U.S.C. §1652; *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 2d 1188 (1938). In applying state law, the Sixth Circuit follows the law of the State as announced by that State's supreme court. *Ray Industries, Inc. v. Liberty Mut. Ins. Co.*, 974 F.2d 754, 758 (6th Cir. 1992); *Miles v. Kohli & Kaliher Assocs.,* 917 F.2d 235, 241 (6th Cir. 1990).

It is undisputed that Plaintiff was an employee at will. In Ohio

> ¶1. Public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute. ¶2. Henceforth, the right of employers to terminate employment at will for "any cause" no longer includes the discharge of an employee where the discharge is in violation of a statute and thereby contravenes public policy. ¶3. In Ohio, a cause of action for wrongful discharge in violation of public policy may be brought in tort.

Syllabus in *Greeley v. Miami Valley Maintenance Contractors*, 49 Ohio St. 3d 228, 551 N.E. 2d 981 (1990).

> 2. To state a claim for wrongful discharge in violation of public policy, a plaintiff must allege facts demonstrating that the employer's act of discharging him contravened a 'clear public policy.'
>
> 3. 'Clear public policy' sufficient to justify an exception to the employment-at-will doctrine is not limited to public policy expressed by the General Assembly in the form of statutory enactments, but may also be discerned as a matter of law based on other sources, such as the Constitutions of Ohio and the United States, administrative

14

rules and regulations, and the common law.

Syllabus in *Painter v. Graley*, 70 Ohio St. 3d 377, 639 N.E. 2d 51 (1994)(¶¶ 1, 2, & 3)(*Greeley v. Miami Valley Maintenance Contractors, Inc*., 49 Ohio St. 3d 228, 551 N.E. 2d 981 (1990) affirmed and followed; *Tulloh v. Goodyear Atomic Corp*., 62 Ohio St. 3d 541, 584 N.E. 2d 729 (1992)[limiting sources to statutes] overruled.) The clarity and jeopardy elements, both of which involve relatively pure law and policy questions, are questions of law to be determined by the court. *Collins v. Rizkana*, 73 Ohio St. 3d 65, 70 (1995). The jury decides factual issues relating to causation and overriding justification. *Id.*

Plaintiff correctly asserts that there is a clear public policy in Ohio, embodied in both the Americans with Disabilities Act and Ohio Revised Code § 4112.02 and 4112.99, against the discharge of employees based on a perception that they are disabled. *White v. Honda Mfg. of America*, 191 F. Supp. 2d 933, 953 (S.D. Ohio 2002). In *White,* this Court also found the jeopardy element satisfied despite the existence of a statutory remedy for violations of Ohio Revised Code § 4112.02. *Id*. at 954, relying on *Kulch v. Structural Fibers*, 78 Ohio St.3d 134, 150-51 (1997)(whistleblower discrimination), and *Livingston v. Hillside Rehabilitation Hospital,* 79 Ohio St. 3d 249 (1997)(age discrimination).

Although Plaintiff has satisfied the first two elements of her common law public policy discharge claim, the balance of the claim rests on her assertion that she was terminated because she refused to release her complete medical records. There remains a material question of fact on whether that is what happened or whether some more restricted release was demanded. Whatever release was demanded, it is clear Plaintiff was discharged for not giving it. However, on the present state of undisputed facts, it cannot be determined what was demanded or whether Defendant's agent, Dr. Almazan, needed what was demanded to make a proper fitness for duty determination.

Plaintiff is therefore not entitled to summary judgment on her common law public policy

discharge claim.

**Defendant's Motion**

Based on the foregoing analysis, Plaintiff cannot establish that her constitutional rights were violated (Eighth and Ninth Claims). She has offered no proof which would support a finding that she was retaliated against for engaging in activity protected by Title VII (Fourth Claim).

Whether she can establish a sex discrimination claim (Third and Fifth Claims) depends upon whether she can produce sufficient evidence to persuade the jury that the whole sequence of events which occurred to her was a pretext for sex discrimination so that, having discharged her, Defendant was able to employ Josh Pollack. Defendant has produced evidence sufficient to allow a jury to conclude that it has a policy of requiring employees who return to work after an injury to have a fitness for duty examination, but there are admissions from which a jury could infer that that policy is not always enforced (See Gustafson Depo.). If the jury believes it was enforced in this case so that Plaintiff could be discharged with the plan to replace her with a male, the jury could return a verdict in Plaintiff's favor on the Third and Fifth Claims. Defendant is not entitled to summary judgment on those claims.

With respect to Plaintiff's remaining claims (First, Second, Six, Seven, and Ten), these turn on the material factual question of whether Defendant insisted on a release of medical records beyond what was legitimately required for the fitness for duty examination. It would be a direct violation of the ADA, per the analysis in *Sullivan, supra,* to insist on an examination beyond the necessary scope. If that were found, then it would be a retaliation violation of the ADA for Defendant to discharge Plaintiff for refusing to acquiesce. Those violations of the ADA would support findings of violations of Ohio Revised Code §§ 4112.02 and 4112.99 and the Ohio common

law public policy against discharge of persons similarly situated to the Plaintiff.

## Conclusion

Plaintiff is not entitled to summary judgment on any of her claims and her Motion for Summary Judgment (Doc. No. 14) is denied. As to Plaintiff's Fourth, Eighth, and Ninth Claims for Relief, the Court finds there are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law. As to those claims, Defendant's First Motion for Summary Judgment (Doc. No. 10) is granted and it is otherwise denied.

The parties' joint proposed final pretrial order in this case is due December 29, 2006; the final pretrial conference will be held on January 2, 2007, at 4:30 p.m. by telephone, by which date the parties are to have exchanged trial exhibits. The case remains set for trial to a jury on January 8, 2007.

December 6, 2006.

                                                      s/ Michael R. Merz
                                          Chief United States Magistrate Judge